**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA**

| | |
|---|---|
| PHILLIP WAYNE BROYAL, ) <br> ) <br> Petitioner, ) <br> ) <br> v. ) <br> ) <br> ERIC A. HOOKS, ) <br> ) <br> Respondent. ) | 1:17CV834 |

## MEMORANDUM OPINION AND RECOMMENDATION
## OF UNITED STATES MAGISTRATE JUDGE

Petitioner, a prisoner of the State of North Carolina, seeks a writ of habeas corpus pursuant to 28 U.S.C. § 2254 (the "Petition"). (Docket Entry 1.) Respondent has moved for summary judgment. (Docket Entries 9, 10.) For the reasons that follow, the Court should grant Respondent's Motion for Summary Judgment.

### I. Background

In January 2015, a jury in the Superior Court of Chatham County found Petitioner guilty of intentional child abuse inflicting serious bodily injury, four counts of taking indecent liberties with a child, and two counts of statutory sex offense (all as an habitual felon). (See Docket Entry 1, ¶¶ 1-6; Docket Entry 10-4 at 52; Docket Entry 10-5 at 1-6.)[1] After a presentencing investigation (see Docket Entry 10-5 at 7-9), and

---

[1] The Petition consists of 16 pages of a standard form (Docket Entry 1), followed by pages of materials from Petitioner's underlying state criminal cases (see Docket Entry 1-1). This Memorandum Opinion cites to the standard form portion of the Petition by paragraph and to the remainder of the Petition by the page number in the footer appended to those materials at the time of their docketing in the CM/ECF system. Respondent also attached to his brief in support of his instant Motion documents from Petitioner's state criminal proceedings (see Docket Entries 10-2 to 10-11), the authenticity of which Petitioner has not contested (see Docket Entries dated Jan. 29, 2018, to present). This Memorandum Opinion cites to those items by the page number in their CM/ECF footers.

based on the multiple aggravating factors found by the jury (see id. at 1, 3, 5), the trial court imposed two, consecutive life sentences without the possibility of parole for the statutory sex offense convictions (see id. at 28-36), as well as consecutive prison sentences of 159 to 251 months for the child abuse conviction (see id. at 18-21), and 138 to 226 months for the consolidated indecent liberties convictions (see id. at 22-26). Additionally, the trial court ordered that Petitioner, if released, submit to lifetime satellite-based monitoring (see id. at 27, 37), and, after a hearing, deemed Petitioner a "sexually violent predator" (id. at 38-40).

Petitioner appealed to the North Carolina Court of Appeals and received appointed appellate counsel. (See Docket Entry 1, ¶¶ 9, 16(e); Docket Entry 10-5 at 41-43.) The North Carolina Court of Appeals affirmed, North Carolina v. Broyal, No. COA16-21, 791 S.E.2d 665 (table), 2016 WL 4608201 (Sept. 6, 2016) (unpublished), and the North Carolina Supreme Court denied Petitioner's petition for discretionary review ("PDR"), North Carolina v. Broyal, 369 N.C. 197, 793 S.E.2d 698 (2016).

Petitioner subsequently instituted this action via his Petition. (Docket Entry 1.) Respondent then filed the instant Motion and Supporting Brief (Docket Entries 9, 10), and, despite notification of his right to respond (see Docket Entry 11), Petitioner failed to file any response (see Docket Entries dated Jan. 29, 2018, to present).

## **II. Facts**

On direct appeal, the North Carolina Court of Appeals summarized the trial evidence as follows:

> [Petitioner] is the father of the victim, "Alice."[FN] Alice's mother was just thirteen when Alice was born. [Petitioner] was a few years older. [Petitioner] lived with Alice and her mother for six months following Alice's birth. Alice's mother and [Petitioner] later separated because [Petitioner] impregnated two other girls during the time they lived together.
>
> After that separation, [Petitioner] did not have any contact with Alice for many years. Alice's mother remarried and Alice considered her stepfather to be her father because she had no knowledge of [Petitioner].
>
> In 2008, when Alice was nine years old, [Petitioner's] sister reached out to Alice through Facebook. Shortly after this contact, Alice's mother took her to meet [Petitioner]. Alice's mother did not know that [Petitioner] was a registered sex offender until after this initial visit, when Franklin County [Department of Social Services ("DSS")] removed Alice from her because of the visit with [Petitioner]. Alice's mother later signed a safety plan agreeing to keep Alice away from [Petitioner], and regained custody as a result. When Alice was eleven, [Petitioner] began to write Alice from prison and they continued to correspond during the remainder of [Petitioner's] incarceration.
>
> After [Petitioner] was released from prison, he and Alice would talk on the phone. They later began meeting at the home of one of [Petitioner's] friends. Alice's mother was not aware of these meetings. [Petitioner] gave Alice marijuana and they would smoke it together when they met.
>
> A court later granted [Petitioner] supervised visitation with Alice after a custody hearing. The visitation initially happened during the day but, at Alice's request, these visits became overnight. The visits started out well. However, at some point Alice began coming home from the visits, going straight to her room, and locking her door. She would not talk to her parents.
>
> When Alice would spend the night, she, [Petitioner], and [Petitioner's] girlfriend would all sleep together in one double bed because it was the only place to sleep in the house. Alice slept between [Petitioner] and his girlfriend, and [Petitioner] would ask Alice if she

wanted him to hold her while she fell asleep. Alice would comply, and thought nothing of it because [Petitioner's] girlfriend was in the bed with them.

On the night of 15 December 2012, after smoking "[a] couple of bowls" of marijuana with [Petitioner] and his girlfriend, Alice fell asleep on the bed while [Petitioner] returned to work. She was asleep when he returned. Alice woke because her vagina was hurting. She realized that there were fingers inside her vagina and that [Petitioner] was kissing her on her lips, and using his tongue. Alice tried to roll over and scoot away from him so that he would stop. After she fell back asleep, she awakened again when he was "trying to do it again." This time he had her "pants pulled somewhat down," had his hands on her butt and under her clothes on her breasts, and had his fingers "in the same area" as before. The second time, her vagina was "burn[ing]," "hurting," and "felt like it was swelled [sic]." She rolled over again and tried to get him to stop.

Alice was afraid to tell anyone what happened because [Petitioner] threatened that "if one of his kids had ever put him in jail that . . . he would hurt them." [Petitioner] told Alice this before and after the incident. Instead of telling her mother, Alice began to make excuses to not visit [Petitioner]. It was a dramatic change from before the incident, when Alice had always been very excited to visit [Petitioner]. Alice ultimately told her step-cousin what happened and, at her step-cousin's insistence, then told her mother.

Following the sexual assaults, Alice often had nightmares. She was unable to sleep, and would wake up crying. Her grades declined from A's and B's to almost all F's. She would break down crying anytime she thought of what happened. She lost 20-25 pounds in three or four months because she stopped eating regularly. She got in a fight at school and was charged with simple assault. She started cutting her wrists and legs with a razor blade "or anything sharp [she] could find" because she said it helped her feel better when she could feel something besides the depression and pain. Alice was hospitalized and diagnosed with Post-Traumatic Stress Disorder (PTSD) and she continues to suffer serious psychological consequences from the crime.

[FN] [The Court of Appeals] use[d] a pseudonym to protect the victim's identity.

Broyal, 2016 WL 4608201, at *1-2.

### III. Ground for Relief

Petitioner presents one ground for habeas relief. (See Docket Entry 1, ¶ 12.) Specifically, he alleges that the trial court erred by "introduc[ing] [] testimony that [Petitioner] [wa]s a registered sex offender." (Id., ¶ 12 (GROUND ONE).)

### IV. Habeas Standards

The Court "shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). Further, "[b]efore [the] [C]ourt may grant habeas relief to a state prisoner, the prisoner must exhaust his remedies in state court. In other words, the state prisoner must give the state courts an opportunity to act on his claims before he presents those claims to [this] [C]ourt in a habeas petition. The exhaustion doctrine . . . is now codified at 28 U.S.C. § 2254(b)(1)." O'Sullivan v. Boerckel, 526 U.S. 838, 842 (1999); see also 28 U.S.C. § 2254(b)(3) ("A State shall not be deemed to have waived the exhaustion requirement . . . unless the State, through counsel, expressly waives the requirement.").

### V. Discussion

In Ground One, Petitioner contends that the trial court erred by "introduc[ing] [] testimony that [Petitioner] [wa]s a registered sex offender." (Id., ¶ 12 (GROUND ONE).) In the area on the Section 2254 form below Ground One requesting "[s]upporting facts" Petitioner merely wrote that "[t]he [district attorney] told the

[j]udge that [Petitioner] was a sex offender." (Id., ¶ 12 (GROUND ONE)(a).)

Respondent maintains that the Petition faces a procedural bar, "because Petitioner failed to raise [the substance of Ground One] in federal constitutional terms on direct appeal" (See Docket Entry 10 at 4 (emphasis added) (citing Duncan v. Henry, 513 U.S. 364 (1995), and Mallory v. Smith, 27 F.3d 991, 994-95 (4th Cir. 1994)).) According to Respondent, Sections 15A-1419(a)(3) and (b) of the North Carolina General Statutes bar Petitioner's claim, because he "was in [an] adequate position to have raised [the substance of Ground One in federal constitutional terms] on direct appeal but did not do so[,]" and has neither shown cause and prejudice nor fundamental miscarriage of justice to excuse his default. (Id. at 5 (citing N.C. Gen. Stat. §§ 15A-1419(a)(3) & (b), and Breard v. Pruett, 134 F.3d 615 (4th Cir. 1998)).) Additionally, Respondent maintains that Petitioner's claim meets a "procedural[] bar[] for a second reason[,]" i.e., "he failed to raise it in his PDR to the [North Carolina Supreme Court]." (Id. at 6 (citing O'Sullivan, 526 U.S. at 847).)

In order to exhaust his state court remedies, Petitioner must allow "'the [s]tate the opportunity to pass upon and correct alleged violations of its prisoners' federal rights . . . [by] fairly present[ing] his claim in each appropriate state court . . ., thereby alerting that court to the federal nature of the claim.'" Jones v. Sussex I State Prison, 591 F.3d 707, 712 (4th Cir. 2010) (internal quotation marks omitted) (quoting Baldwin v.

Reese, 541 U.S. 27, 29 (2004)). "Fair presentation" means that "both the operative facts and the <u>controlling legal principles</u>" behind a specific federal habeas claim were "presented face-up and squarely." <u>Baker v. Corcoran</u>, 220 F.3d 276, 289 (4th Cir. 2000) (emphasis added). "[O]rdinarily a state prisoner does not 'fairly present' a claim to a state court if that court must read beyond a petition or a brief (or a similar document) that does not alert it to the presence of a federal claim." <u>Baldwin</u>, 541 U.S. at 32. Petitioner must also "raise his claim before every available state court, including <u>those courts . . . whose review is discretionary</u>." <u>Jones</u>, 591 F.3d at 713 (emphasis added) (citing <u>O'Sullivan</u>, 526 U.S. at 847). Here, Petitioner's claim faces a procedural bar on three separate bases.

First, although Petitioner challenged on direct appeal the trial court's admission of evidence regarding Petitioner's status as a registered sex offender, he relied entirely on state law in making that argument, and did not frame the issue in federal constitutional terms:

> The [s]tate presented evidence that [Petitioner] was a registered sex offender and had been in prison, presumably for some sort of sex crime. This was plain error.
>
> . . .
>
> <u>This case is controlled by *State v. Martinez*, 21[2] N.C. App. 661, 711 S.E.2d 787 (2011), and *State v. Giddens*, 199 N.C. App. 115, 681 S.E.2d 504 (2009).</u> In *Martinez*, a statutory rape case, a social worker testified that the complainant had made a prior accusation against the defendant and DSS substantiated abuse. 212 N.C. App. at 666, 711 S.E.2d at 789. This [c]ourt found this testimony to be improperly admitted and ordered a new trial. *Id.* The *Martinez* panel court relied on *Giddens*.

-7-

> In *Giddens*, the testimony was from a social worker that
> DSS had substantiated abuse. 199 N.C. App. at 119, 681
> S.E.2d at 507. This [c]ourt found admission of this
> testimony to be improper and constituted plain error.
> 199 [N.C. App.] at 123, 681 S.E.2d at 509.

(Docket Entry 10-6 at 19-20 (emphasis added).)[2]

Moreover, the North Carolina Court of Appeals, in turn, clearly interpreted Petitioner's claim as one relying on state law:

> [Petitioner] next argues that the trial court committed
> plain error in allowing the [s]tate to present evidence
> that he was a registered sex offender and that he had
> been in prison. [Petitioner] argues that the [s]tate used
> this evidence to substantiate Alice's allegations of
> sexual abuse. Again, as explained below, we disagree.
>
> . . . [Petitioner] did not object to this evidence at
> trial and we review it for plain error. State v.
> Conaway, 339 N.C. 487, 521, 453 S.E.2d 824, 846 (1995).
>
> [Petitioner] argues that the trial court should have
> excluded this evidence of his status and past criminal
> activity, presumably under Rule 403 of the North Carolina
> Rules of Evidence. Rule 403 states in pertinent part
> that, "[a]lthough relevant, evidence may be excluded if
> its probative value is substantially outweighed by the
> danger of unfair prejudice." N.C. R. Evid. 403. But it
> is well-settled that "evidence, not part of the crime
> charged but pertaining to the chain of events explaining
> the context, motive, and set-up of the crime, is properly
> admitted if linked in time and circumstance with the
> charged crime." State v. Agee, 326 N.C. 542, 548, 391
> S.E.2d 171, 174 (1990).
>
> Here, the evidence establishing that [Petitioner] was a
> registered sex offender and had served time in prison was
> introduced as necessary background to explain
> [Petitioner's] relationship with his daughter. The jury
> heard this evidence to understand why Alice was living
> with her mother and visiting her father in the restricted
> way that she did. Even if an objection had been made to
> this evidence, the trial court would have been well

---

[2] Even if the Court of Appeals could have "read beyond [Petitioner's] brief . . . that d[id] not alert it to the presence of a federal claim[,]" Baldwin, 541 U.S. at 32, the two cases cited by Petitioner in that brief relied upon state law to reach their respective holdings, see Martinez, 212 N.C. App. at 664-66, 711 S.E.2d at 789-90; Giddens, 199 N.C. App. at 120-23, 681 S.E.2d at 507-09.

within its sound discretion to overrule the objection. Accordingly, we find no error, and certainly no plain error, in the trial court's admission of this evidence.

Broyal, 2016 WL 4608201, at *4 (emphasis added).

Thus, Petitioner did not present "face-up and squarely" to the Court of Appeals any <u>federal</u> "controlling legal principles" to support his claim that the trial court improperly admitted evidence of his status as a registered sex offender, Baker, 220 F.3d at 289. Furthermore, because the Court of Appeals would have had to "read beyond [Petitioner's] brief . . . that d[id] not alert it to the presence of a federal claim[,]" Petitioner "d[id] not 'fairly present' [his federal] claim to [that] state court," Baldwin, 541 U.S. at 32. Accordingly, Petitioner's Ground One faces a procedural bar. See Breard, 134 F.3d at 615 (noting that "procedural default also occurs when a habeas petitioner fails to exhaust available state remedies and 'the court to which the petitioner would be required to present his claims in order to meet the exhaustion requirement would now find the claims procedurally barred'" (quoting Coleman v. Thompson, 501 U.S. 722, 735 n.1 (1991))); see also N.C. Gen. Stat. §§ 15A-1419(a)(3) & (b) (requiring denial of claim by MAR court when the petitioner could have raised the claim on direct appeal but did not do so); Lawrence v. Branker, 517 F.3d 700, 714 (4th Cir. 2008) (deeming N.C. Gen. Stat. §§ 15A-1419(a)(3) and (b) generally adequate and independent state grounds precluding federal habeas review).

Second, Petitioner's trial counsel objected neither to the prosecutor's discussion of Petitioner's status as a registered sex

offender in the opening statement and closing argument (see Docket Entry 10-11 at 276, 754, 756), nor to testimony from multiple witnesses regarding that status (see id. at 289, 290, 397-98, 414, 549, 560). As a result, the Court of Appeals reviewed Petitioner's assignment of error contesting the admission of such discussion and testimony for plain error, Broyal, 2016 WL 4608201, at *4. "Where a petitioner fails to comply with a state procedural requirement, such as the requirement of contemporaneous objection at trial to preserve an issue for appeal, and the failure provides adequate and independent grounds for the state court's denial of relief, federal review of the issue will also be barred where the state has expressly relied on procedural default." Byers v. Hathaway, No. 3:07cv290, 2010 WL 5092247, at * 11 (W.D.N.C. Sept.7, 2010) (unpublished) (citing, inter alia, Coleman, 501 U.S. at 722, Harris v. Reed, 489 U.S. 255 (1989), Murray v. Carrier, 477 U.S. 478 (1986), and Wainwright v. Sykes, 433 U.S. 72 (1977)). Accordingly, the Court of Appeals' plain error review of Petitioner's sex-offender-based claim results in an additional basis for procedural default of that claim. See Daniels v. Lee, 316 F.3d 477, 487–88 (4th Cir. 2003) (finding federal habeas claim procedurally barred where the petitioner failed to object at trial, resulting in plain error review of claim in North Carolina Supreme Court); Hinkle v. Randle, 271 F.3d 239, 244 (6th Cir. 2001) ("We have held that [a] contemporaneous objection rule . . . bars federal habeas review absent a showing of cause and prejudice . . . . Moreover, we view

a state appellate court's review for plain error as the enforcement of a procedural default.").

Third, Petitioner neither challenged the prosecution's discussion in opening and closing of Petitioner's status as a registered sex offender, nor the testimony of multiple witnesses regarding such status, in his PDR to the North Carolina Supreme Court. (See Docket Entry 10-9.) As Petitioner must "raise his claim before every available state court, including <u>those courts . . . whose review is discretionary</u>." Jones, 591 F.3d at 713 (emphasis added), Petitioner's failure to assert the sex offender-based claim in his PDR results in an additional basis for procedural default of that claim, see O'Sullivan, 526 U.S. at 847 (holding that, to fully exhaust state remedies, "state prisoners [must] file [PDRs] when that review is part of the ordinary appellate review procedure in the [s]tate").

Furthermore, Petitioner did not file any response to Respondent's instant Motion (see Docket Entries dated Jan. 29, 2018, to present), and, thus, has shown neither cause and prejudice nor a fundamental miscarriage of justice sufficient to excuse his default, see McCarver v. Lee, 221 F.3d 583, 588 (4th Cir. 2000) ("Federal habeas review of a state prisoner's claims that are procedurally defaulted under independent and adequate state procedural rules is barred unless the prisoner can show cause for the default and demonstrate actual prejudice as a result of the alleged violation of federal law, or prove that failure to consider the claims will result in a fundamental miscarriage of justice.").

-11-

In sum, Petitioner's lone claim faces a procedural bar precluding this Court's review.

## **VI. Conclusion**

**IT IS THEREFORE RECOMMENDED** that Respondent's Motion for Summary Judgment (Docket Entry 9) be granted, that the Petition (Docket Entry 1) be denied, and that Judgment be entered dismissing this action without issuance of a certificate of appealability.

/s/ L. Patrick Auld
**L. Patrick Auld
United States Magistrate Judge**

June 26, 2018